# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAURA PREFONTAINE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> RESEARCH IN MOTION LIMITED, BRIAN BIDULKA, JAMES L. BALSILLIE, AND MIHALIS "MICHAEL" LAZARIDIS, <br><br> Defendants. | Civil Action No. 11 Civ. 4068 (RJS) |
| NANCY A. DEMARKIS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> RESEARCH IN MOTION LIMITED, BRIAN BIDULKA, JAMES L. BALSILLIE, AND MIHALIS "MICHAEL" LAZARIDIS, <br><br> Defendants. | Civil Action No. 11 Civ. 4560 (RJS) |

(caption continued on subsequent page)

**MEMORANDUM OF LAW IN SUPPORT OF THE RIM INVESTOR GROUP'S MOTION FOR (1) CONSOLIDATION; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**

MICHAEL MCNEAL and KENNETH GOLD,
Individually and on Behalf of All Others Similarly
Situated,

                              Plaintiffs,
              v.                                          Civil Action No. 11 Civ. 5472 (RJS)

RESEARCH IN MOTION LIMITED, BRIAN
BIDULKA, JAMES L. BALSILLIE and MIHALIS
"MICHAEL" LAZARIDIS,

                              Defendants.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

ARGUMENT ..................................................................................................................... 6

   I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ............ 6

   II.   THE RIM INVESTOR GROUP SHOULD BE
       APPOINTED LEAD PLAINTIFF FOR THE CLASS ............................................ 7

      A.   The PSLRA's Provisions Concerning
           The Appointment Of A Lead Plaintiff .............................................................. 7

      B.   Under The PSLRA, The RIM Investor
           Group Should Be Appointed Lead Plaintiff ...................................................... 8

          1.   The RIM Investor Group Filed A Timely Motion ..................................... 9

          2.   The RIM Investor Group Has The Largest
              Financial Interest in the Relief Sought by the Class ................................. 9

          3.   The RIM Investor Group Meets Rule 23's
              Typicality and Adequacy Requirements .................................................. 10

   III.  THE COURT SHOULD APPROVE THE RIM INVESTOR
       GROUP'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL ........... 13

CONCLUSION ................................................................................................................. 14

i

## TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*Barnet v. Elan Corp.*,
    236 F.R.D. 158 (S.D.N.Y. 2005) .................................................................................11

*Bassin v. Decode Genetics, Inc.*,
    230 F.R.D. 313 (S.D.N.Y. 2005) ...................................................................................7

*Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*,
    252 F.R.D. 188 (S.D.N.Y. 2008) ........................................................................6, 11, 12

*Davidson v. E\*Trade Fin. Corp.*,
    C.A. No. 07 Civ. 10400, 2008 U.S. Dist. LEXIS 61265 (S.D.N.Y. July 7, 2008) ..................11

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993) ...........................................11

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) ...........................................................................7, 8, 10

*In re General Electric Sec. Litig.*,
    09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ..........6, 7, 10, 12

*Greebel v FTP Software, Inc.*,
    939 F. Supp. 57 (D. Mass. 1996) ................................................................................9

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990), *cert denied*, 498 U.S. 920 (1990) ..............................................6

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
    11 Civ. 0917 (BSJ) (JCF), 2011 U.S. Dist. LEXIS 54939 (S.D.N.Y. May 19, 2011).......12, 13

*Lax v. First Merchants Acceptance Corp.*,
    No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .................................9

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993).........................................................................................6

*In re Nice Sys., Ltd. Sec. Litig.*,
    188 F.R.D. 206 (D.N.J. 1999).......................................................................................9

*In re Orion Sec. Litig.*,
    No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008) .................11

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of America Corp.*,
    11 Civ. 733 (WHP), 2011 U.S. Dist. LEXIS 69022 (S.D.N.Y. June 20, 2011) .....................12

*Strougo v. Brantley Capital Corp.*,
   243 F.R.D. 100 (S.D.N.Y. 2007) ......................................................................................10

*In re Tronox, Inc. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) ....................................................................................6, 8

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B) ...................................................................................................1, 10

15 U.S.C. 78u-4(a)(3)(B)(ii) ......................................................................................................6

15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(I)....................................................................................7

15 U.S.C. § 78u-4(a)(3)(A)(i) .....................................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(i) .....................................................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(ii) ...............................................................................................1, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...................................................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...............................................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ........................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)..............................................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(v) ...............................................................................................2, 13

Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 .......................................2

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 42(a) .....................................................................................2, 6

Rule 10b-5....................................................................................................................................2

Rule 23 ................................................................................................................................2, 8, 10

Rule 23(a).....................................................................................................................................10

Rule 23(a)(4)................................................................................................................................12

Movants Michael McNeal and Kenneth Gold (the "RIM Investor Group"), on behalf of themselves and the Class defined herein, respectfully submit this memorandum of law pursuant to Section 21D(b)(3)(B) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in support of the RIM Investor Group's motion for the entry of an order:  (1) consolidating the Actions (defined below) and any related actions that may be filed; (2) appointing the RIM Investor Group as Lead Plaintiff for the Actions; and (3) approving the RIM Investor Group's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.

## PRELIMINARY STATEMENT

Presently pending in this District are three securities class actions (the "Actions") brought on behalf of a putative class (the "Class") of investors who suffered damages as a result of defendants' misconduct in connection with their transactions in Research In Motion Limited ("RIM" or the "Company") securities during the relevant period.[1]  Various movants seek to: (1) consolidate all related actions; (2) be appointed lead plaintiff; and (3) approve their selection for lead counsel.

As an initial matter, the Court must decide whether to consolidate the Actions.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).  On this threshold question, little doubt exists.  The Actions assert

---

[1]    The Actions are set forth in the table below:

| Case Name | Civil Action No. | Class Period | Securities |
|---|---|---|---|
| *McNeal v. Research In Motion Limited, et al.* | No. 1:11-cv-05472 (RJS) | December 16, 2010 to June 16, 2011 | Common Stock & Options |
| *Prefontaine v. Research In Motion Limited, et al.* | No. 1:11-cv-04068 (RJS) | December 16, 2010 to April 28, 2011 | Common Stock |
| *Demarkis v. Research In Motion Limited, et al.* | No. 1:11-cv-04560 (RJS) | December 16, 2010 to April 28, 2011 | Common Stock |

claims for violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934

("Exchange Act"), and Securities Exchange Commission ("SEC") Rule 10b-5 promulgated

thereunder.   Furthermore, the Actions allege substantially the same misconduct by RIM and

three of the Company's officers (Co-Chief Executive Officers James L. Balsillie and Mihalis

"Michael" Lazardi and Chief Financial Officer Brian Bidulka).   Because the Actions raise

common issues of fact and law, and consolidation will be more efficient for the Court and the

parties, the Actions should be consolidated under Federal Rule of Civil Procedure 42(a).

With respect to the appointment of a lead plaintiff to oversee the consolidated Actions,

Congress established a presumption in the PSLRA that requires the Court to appoint as lead

plaintiff the "person or group of persons" who demonstrate the "largest financial interest in the

litigation" and who otherwise satisfies Rule 23's typicality and adequacy requirements for class

representatives.   *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

With total losses of $4,268,418.00, the RIM Investor Group, to the best of counsel's

knowledge, possesses the largest financial interest in the litigation of any movant.   Accordingly,

the RIM Investor Group is the presumptive lead plaintiff.   The RIM Investor Group also satisfies

Rule 23's typicality and adequacy requirements.   The RIM Investor Group's claims are typical of

the Class's claims because its members suffered losses in their RIM investments as a result of the

defendants' false and misleading statements.   Further, the RIM Investor Group has no conflict

with the Class and will adequately protect the Class's interests given the RIM Investor Group's

significant stake in the litigation and its selection of competent counsel.

Lastly, if appointed Lead Plaintiff, the RIM Investor Group is entitled to select, subject to

the Court's approval, lead counsel to represent the Class.   *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

The RIM Investor Group has engaged the Faruqi Firm for this purpose.   The Faruqi Firm is an

appropriate selection to serve as Lead Counsel because it is a highly experienced plaintiffs' firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, the RIM Investor Group's motion should be granted in its entirety.

## FACTUAL BACKGROUND

RIM is a designer, manufacturer, and marketer of wireless solutions for the worldwide mobile communications market. Through the development of integrated hardware, software, and services that support wireless network standards, the Company provides platforms and solutions for access to time-sensitive information, including e-mail, phone, short message service, Internet and intranet-based applications. RIM's primary revenue stream is generated by the popular Blackberry® wireless solution, comprised of wireless devices, software, and services.

During the relevant period, defendants issued materially false and misleading statements regarding the Company's financials and business prospects. Specifically, the Company failed to inform investors that its aging product line and inability to introduce new products to the market were negatively impacting the Company's business and margins. Contrary to defendants' statements, the Company was unable to timely introduce new products, which were critical to the Company's ability to maintain its market share in the extremely competitive smartphone market. RIM's inability to bring new products to the market was further impeded by the fact that the Company had become resource limited as it simultaneously attempted to develop new smartphones, a new operating system, and a new tablet computing device. This resource limitation disrupted RIM's production ability, resulting in lower-than-expected Blackberry® smartphone sales and shipments in the United Stated and Latin America. Moreover, as the Company failed to bring new products to the market, it was forced to rely on sales of older-model smart phones, which commanded a far-lower retail price than newer, but delayed,

3

offerings.  As a result of defendants' false statements and omissions, RIM common stock traded

at artificially inflated prices during the relevant period, reaching a high of $69.86 per share on

February 18, 2011, with the prices of RIM options correspondingly affected.

At the start of the relevant period, defendants touted the Company's record third quarter

2011 Blackberry® smartphone shipments, noting that the third quarter 2011 the "sixth

consecutive quarter that RIM has reported record shipments."  The Company also stated that:

> International markets continue to adopt Blackberry in record numbers and
> Blackberry is the number one smartphone in several markets in Western
> Europe, including the UK. And Blackberry was the number one smartphone
> for the third consecutive quarter in Latin America.

Additionally, analysts and market commentators were optimistic when responding to the

Company's positive comments regarding RIM and its operating system built by the Company's

QNX Software Systems unit for RIM's PlayBook tablet offering.  For example, Jefferies analysts

stated:

> QNX better and earlier than expected: our checks indicates that the new OS
> provides a great browsing experience, is scalable so can address low end and
> high end, is easy to port Android apps to, and is more secure, and requires less
> bandwidth.  Also, the transition to QNX will be faster than expected.

On March 24, 2011, however, the Company announced disappointing fourth quarter and

fiscal 2011 financial results and guidance, resulting in an 11.2% drop in the price of RIM

common stock, or $7.20 per share on March 25, 2011, on heavy trading volume with a

corresponding effect on the prices of RIM options.  In response to this partial disclosure, analysts

at Deutsche Bank and Robert W. Baird downgraded RIM.

On April 28, 2011, RIM updated its first quarter 2012 guidance with lower earnings per

share ("EPS") estimates than projected the prior month, as a result of lower than expected

4

shipments of Blackberry smartphones in March 2011. RIM blamed lower shipment volumes of Blackberry smartphones for the Company's EPS shortfall.

On this news, RIM's common stock plummeted 14%, or $7.94 per share, on heavy trading volume to close at $48.65 per share on April 29, 2011, correspondingly affecting the price of RIM options.

On June 16, 2011, the Company announced its financial result for the first quarter of fiscal 2012, ended May 28, 2011. For the quarter the Company disappointed analysts and investors, reporting earnings of $1.33 per share, down $0.05 from the first quarter of fiscal 2011. The Company also revised its expectations for full year per share earnings.

On that news, RIM's common stock plummeted even further on over 113 million shares traded to close on June 17, 2011 at $27.75, off 21.5% or $7.58 from the prior day's close of $35.33, correspondingly affecting the price of RIM options.

Throughout this time, the defendants failed to disclose to the investing public, that:

(a)     average selling prices ("ASP") for the Company's BlackBerry smartphones -- representing 80% of its total revenues -- were falling off precipitously as a result of competition from the Apple Iphone and Google's Android-powered smartphones;

(b)     the Company's aging product line and inability to introduce new products to the market was negatively impacting the Company's business and margins;

(c)     due to execution issues, product delays, and lackluster product launches, defendants knew that shipments of Blackberry smartphones would be down and inventory would be up; and

(d)     as a result of the foregoing, defendants' statements regarding the Company's financial performance and expected earnings were false and misleading and lacked a

5

reasonable basis when made.

As a result of the defendants' false statements and omissions, RIM's common stock traded at inflated levels during the Class Period, correspondingly affecting the price of RIM options. As the truth regarding the Company seeped into the market, the Company's shares were hammered by massive sales, sending them down over 60% from their Class Period high. The Actions represent the best chance the Class has to receive compensation for being defrauded, and the RIM Investor Group seeks to ensure that the Class receives the maximum possible recovery.

**ARGUMENT**

## I.      THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. 78u-4(a)(3)(B)(ii). *See also* 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA advises courts to make the decision regarding the appointment of the lead plaintiff for the consolidated action "as soon as practicable after [the consolidation] decision is rendered").

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990), *cert denied*, 498 U.S. 920 (1990)); *In re Tronox, Inc. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (consolidating securities class actions). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *In re General Electric Sec.*

6

*Litig.*, 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4-8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The actions at issue here clearly involve common questions of facts *and* law. The Actions assert claims under the Exchange Act on behalf of investors who were defrauded by RIM and three of the Company's officers. The Actions allege substantially the same wrongdoing, namely that the defendants issued materially false and misleading statements and omissions that artificially inflated RIM's stock price and damaged the Class when the truth emerged and RIM's stock price crashed. Consolidation of the Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re General Electric*, 2009 U.S. Dist. LEXIS 69133, at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## II. THE RIM INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

### A. The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(I). It provides that within 20 days of the filing of the action, plaintiffs are required to publish a notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members."  Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person or group of persons that:

> (aa)   has either filed the complaint or made a motion in response to a notice (published by a complainant);
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Foley*, 272 F.R.D. at 127 (describing the PSLRA's two-step competitive process for determining the "most adequate plaintiff"); *In re Tronox*, 262 F.R.D. at 343-44 (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff:  "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Foley*, 272 F.R.D. at 127; *In re Tronox*, 262 F.R.D. at 344.

**B.    Under The PSLRA, The RIM Investor
        <u>Group Should Be Appointed Lead Plaintiff</u>**

As discussed below, the RIM Investor Group should be appointed lead plaintiff because all of the PSLRA's procedural hurdles have been satisfied, the RIM Investor Group holds the largest financial interest of any movant, and the RIM Investor Group otherwise satisfies Rule 23's typicality and adequacy requirements.

### 1.    The RIM Investor Group Filed A Timely Motion

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint in the Actions was required to publish notice of the complaint within twenty (20) days of its filing. Counsel for Laura Prefontaine published notice of the lead plaintiff deadline via *Business Wire* on June 13, 2011.[2]  *See* Gonnello Decl., Ex. A.[3]  Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice (*i.e.*, on or before August 12, 2011).  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  Thus, the RIM Investor Group's motion was timely filed.  Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, the RIM Investor Group timely signed and submitted certifications with their complaint, identifying all of their relevant RIM trades during the Class Period, and detailing the RIM Investor Group's suitability to serve as lead plaintiff in this case.  *See* Gonnello Decl., Ex. B.  The PSLRA's procedural requirements have therefore been met.

### 2.    The RIM Investor Group Has The Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

---

[2]    Publication by *Business Wire* is an adequate means for meeting the statutory requirement that notice be published "in a widely circulated business-oriented publication or wire service."  *See In re Nice Sys., Ltd. Sec. Litig.*, 188 F.R.D. 206, 215 (D.N.J. 1999); *Greebel v FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchants Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

[3]    All references to Exhibits are references to the exhibits annexed to the Declaration of Richard W. Gonnello, dated August 12, 2011, filed in support hereof.

Although the PSLRA is silent as to the methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit often look to four factors in the inquiry: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Foley*, 272 F.R.D. at 127-28 (citations omitted); *General Electric Sec. Litig.*, 2009 U.S. Dist. LEXIS 69133, at *9. Courts have placed the most emphasis on the last of the four factors: the approximate loss suffered by the movant. *Foley*, 272 F.R.D. at 128 (citations omitted); *In re General Electric Sec. Litig.*, 2009 U.S. Dist. LEXIS 69133, at *11 (citation omitted).

Overall, the RIM Investor Group collectively purchased 800 shares of RIM common stock and sold 470,701 put contracts during the relevant period, suffering losses of $4,268,418.00.[4] *See* Gonnello Decl., Ex. C. The RIM Investor Group is presently unaware of any other movant with a larger financial interest in the outcome of this litigation. Accordingly, the RIM Investor Group is the presumptive lead plaintiff.

### 3.    The RIM Investor Group Meets Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA also requires that the lead plaintiff make a preliminary showing that it satisfies Rule 23's requirements to be certified as a class representative. 15 U.S.C. § 78u-4(a)(3)(B). When assessing potential lead plaintiffs, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See, e.g.*, *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007); *see*

---

[4]    These calculations are solely for purposes of this motion and are not meant to represent the amount of, or method of calculation of, damages that plaintiffs may present at trial.

*also Blackmoss Invs., Inc.,* 252 F.R.D. at 191 ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.") (citation omitted).

Typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Blackmoss Invs., Inc.*, 252 F.R.D. at 191 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).  However, the claims of the class representative need not be identical to those of all members of the class. *Id.*; *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 7, 2008) ("Indeed, the possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (internal quotations and citation omitted).

The RIM Investor Group's claims are clearly typical of the Class's claims.  The RIM Investor Group invested in RIM common stock and options during the relevant period, suffered damages as a result of the Company's false and misleading statements, and asserted claims against RIM and its officers under the federal securities laws.  Because the factual and legal bases of the RIM Investor Group's claims are similar, if not identical, to those of the Class's claims, the RIM Investor Group necessarily satisfies the typicality requirement.  *See Barnet v. Elan Corp.*, 236 F.R.D. 158, 163 (S.D.N.Y. 2005)  (investor group typical where it asserted that it "purchased [company's] securities during the class period and was injured by false and misleading representations made by defendants in violation of the [Exchange] Act"); *see also Davidson v. E*Trade Fin. Corp.*, C.A. No. 07 Civ. 10400, 2008 U.S. Dist. LEXIS 61265, at *15-

11

22 (S.D.N.Y. July 7, 2008) (noting that "courts have often appointed as lead plaintiffs purchasers of a wide variety of financial instruments" including options investors).

With respect to the RIM Investor Group's adequacy, Rule 23(a)(4) requires that a representative party will "fairly and adequately protect the interests of the Class."  Adequate representation will be found if able and experienced counsel represents the representative, and the representative has no fundamental conflicts of interest with the interests of the class as a whole.  *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of America Corp.*, 11 Civ. 733 (WHP), 2011 U.S. Dist. LEXIS 69022, at *8 (S.D.N.Y. June 20, 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider:  (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation.") (citation omitted); *General Electric Sec. Litig.*, 2009 U.S. Dist. LEXIS 69133, at *15 (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel.").

As evidenced by the representations in the RIM Investor Group's certifications, the group's interests are perfectly aligned with, and by no means antagonistic to, the interests of the Class.  *See Kokkinis v. Aegean Marine Petroleum Network, Inc.*, 11 Civ. 0917 (BSJ) (JCF), 2011 U.S. Dist. LEXIS 54939, at *4 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *Blackmoss Invs., Inc.*, 252 F.R.D. at 191 (same).  Moreover, the RIM Investor Group has selected and retained highly competent counsel to litigate the claims on behalf of himself and the Class.  As explained below in Section III, the Faruqi Firm is well regarded for its experience, knowledge, and ability to conduct complex securities class actions on behalf of plaintiffs.  *See* Gonnello Decl., Ex. D.  Consequently, the RIM Investor Group is

12

more than adequate to represent the Class and has every incentive to maximize the Class's

recovery.

In light of the foregoing, the RIM Investor Group respectfully submits that it should be

appointed lead plaintiff for the consolidated Actions.

**III.     THE COURT SHOULD APPROVE THE RIM INVESTOR**
**GROUP'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff is entitled to select and retain

lead counsel for the Class, subject to the Court's approval.  The RIM Investor Group has selected

the Faruqi Firm to be lead counsel.  As reflected in the firm's resume, the Faruqi Firm possesses

extensive experience litigating complex class actions on behalf of plaintiffs, including securities

class actions.  *See* Gonnello Decl., Ex. D.  Accordingly, the Faruqi Firm is amply qualified to

represent the Class, and the RIM Investor Group requests that the Court approve its selection of

the Faruqi Firm as Lead Counsel for the putative class.  *See Aegean Marine Petroleum Network,*

*Inc.*, 2011 U.S. Dist. LEXIS 54939, at *4-5 (citations omitted).

## CONCLUSION

For the foregoing reasons, the RIM Investor Group respectfully requests that the Court: (1) consolidate the Actions and any related actions that may be filed; (2) appoint the RIM Investor Group as lead plaintiff for the consolidated Actions; (3) approve the RIM Investor Group's selection of the Faruqi Firm as lead counsel for the Class; and (4) grant such other relief as the Court may deem just and proper.

Dated:  August 12, 2011

Respectfully submitted,

**FARUQI & FARUQI, LLP**


By: /s/ Richard W. Gonnello

Antonio Vozzolo
Richard W. Gonnello
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
avozzolo@faruqilaw.com
rgonnello@faruqilaw.com

Jacob A. Goldberg
Sandra G. Smith
101 Greenwood Avenue, Suite 600
Jenkintown, PA  19046
Tel: 215-277-5770
Fax: 215-277-5771
jgoldberg@faruqilaw.com
ssmith@faruqilaw.com

*Attorneys for the RIM Investor Group*

14