UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAURA PREFONTAINE, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br>    v.<br><br>RESEARCH IN MOTION LIMITED, BRIAN BIDULKA, JAMES L. BALSILLIE and MIHALIS "MICHAEL" LAZARIDIS,<br><br>                Defendants. | Civil Action No. 1:11-cv-04068-RJS |
| NANCY A. DEMARKIS, Individually and on Behalf of All Others Similarly Situated,<br>                Plaintiff,<br>    v.<br><br>RESEARCH IN MOTION LIMITED, BRIAN BIDULKA, JAMES L. BALSILLIE and MIHALIS "MICHAEL" LAZARIDIS,<br><br>                Defendants. | Civil Action No. 1:11-cv-04560-RJS |
| MICHAEL MCNEAL AND KENNETH GOLD, Individually And On Behalf of All Others Similarly Situated,<br>                Plaintiffs,<br>    v.<br><br>RESEARCH IN MOTION LIMITED, BRIAN BIDULKA, JAMES L. BALSILLIE and MIHALIS "MICHAEL" LAZARIDIS,<br><br>                Defendants. | Civil Action No. 1:11-cv-05472-RJS |

**MEMORANDUM IN SUPPORT OF THE MOTION OF ROBERT SHEMIAN TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………………..1

PROCEDURAL BACKGROUND…………………………………………………………...2

STATEMENT OF FACTS…………………………………………………………………...3

ARGUMENT………………………………………………………………………………...5

I.   THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS………………...5

II.  MR. SHEMIAN SHOULD BE APPOINTED
     LEAD PLAINTIFF…………………………………………………………………….6

     A.   The Procedural Requirements Pursuant to the PSLRA……………………........6

     B.   Mr. Shemian Is "The Most Adequate Plaintiff"…………………………………7

          1.   Mr. Shemian Has Complied With The
               PSLRA And Should Be Appointed Lead Plaintiff………………………..7

          2.   Mr. Shemian Has The Largest Financial Interest…………………………8

          3.   Mr. Shemian Satisfies The Requirements Of Rule 23………………..........8

               i.  Mr. Shemian's Claims Are Typical Of The Claims
                   Of All The Class Members………………………………………………9

               ii. Mr. Shemian Will Adequately Represent
                   The Class……………………………………………………………….10

III. THE COURT SHOULD APPROVE MR. SHEMIAN'S
     CHOICE OF LEAD COUNSEL……………………………………………………........11

CONCLUSION……………………………………………………………………………..11

**PRELIMINARY STATEMENT**

Mr. Robert Shemian ("Mr. Shemian" or "Movant") submits this memorandum in support of his motion: (1) to consolidate, pursuant to Fed. R. Civ. P. 42, the related securities fraud class actions filed against Research In Motion Limited ("RIM" or "Company") and other defendants (collectively, "Defendants") between December 16, 2010 and June 16, 2011, inclusive (the "Class Period")[1]; (2) to be appointed Lead Plaintiff in these Actions pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by Section 101(b) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (3) for approval of his selection of the law firm of Brower Piven, A Professional Corporation ("Brower Piven") as Lead Counsel for the Class.

As described in the Loss Chart for Robert Shemian attached to the Declaration Of David A.P. Brower In Support Of The Motion Of Robert Shemian To Consolidate Related Actions; To Be Appointed Lead Plaintiff; And To Approve Proposed Lead Plaintiff's Choice Of Counsel ("Brower Decl."), at Exhibit B, Mr. Shemian, who has suffered an approximate loss of $21,783,978.68 on shares of RIM common stock as a result of the three partial disclosures alleged in the *McNeal* Action, has the largest known financial interest in the relief sought by the Class. To the best of his knowledge, Mr. Shemian has sustained the largest loss of any investor seeking to be appointed Lead Plaintiff in these Actions.

---

[1] The related securities fraud class actions in this Court include the following three cases: *Prefontaine v. Research In Motion Limited, et al.*, No. 1:11-cv-04560-RJS (S.D.N.Y.; filed on June 15, 2011) ("*Prefontaine* Action"); *Demarkis v. Research In Motion Limited, et al.*, No. 1:11-cv-04068-RJS (S.D.N.Y.; filed on July 5, 2011) ("*Demarkis* Action"); and *McNeal, et al. v. Research In Motion Limited, et al.*, No. 1:11-cv-05472-UA (S.D.N.Y.; filed on August 5, 2011) ("*McNeal* Action") (collectively, the "Action(s)"). The class period alleged in the *Prefontaine* Action and the *Demarkis* Action is December 16, 2010 and April 28, 2011, inclusive. For purposes of this lead plaintiff motion, Mr. Shemian adopts the longer Class Period as set forth in the *McNeal* Action.

In addition to evidencing the largest financial interest in the outcome of this litigation, Mr. Shemian's Plaintiff's Certification demonstrates his intent to serve as Lead Plaintiff in this litigation ("… [I am] willing to serve as a lead plaintiff … who acts on behalf of other class members in directing the action … [my] ability to share in any recovery as a member of the class is unaffected by [my] decision to serve as a representative party"), including his cognizance of his duties of serving in that role.[2]  See Brower Decl., Exhibit A at ¶¶3, 6.  Mr. Shemian fully understands his duties and responsibilities to the proposed class (the "Class"), and is willing and able to oversee the vigorous prosecution of these Actions.  Mr. Shemian is presumptively the "most adequate plaintiff."

## PROCEDURAL BACKGROUND

Three related cases alleging substantially identical claims for nearly identical classes of purchasers of RIM securities are pending in this Court.  The first of these Actions, the *Prefontaine* Action, was filed on June 15, 2011.[3]  Thereafter, the *Demarkis* Action and the *McNeal* Action were filed in this Court alleging the same or similar claims.

Pursuant to 15 U.S.C. §78u-4(a)(3)A)(i), on June 13, 2011, the notice that a class action had been initiated against Defendants was published on *Business Wire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than 60 days from the notice (August 12,

---

[2] The PSLRA authorizes any member or group of members of the putative Class seeking to be appointed Lead Plaintiff to either file a complaint or move for appointment as Lead Plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). A copy of Mr. Shemian's Plaintiff's Certification reflecting his transactions in RIM during the Class Period is attached as Exhibit A to the Brower Declaration.

[3] Previously, two actions alleging similar claims as those in these Actions were filed in this Court: *Stabile v. Research In Motion Limited, et al.*, No. 1:11-cv-03615-AKH (S.D.N.Y.; filed on May 26, 2011) ("*Stabile* Action") and *Chatlin v. Research In Motion Limited, et al.*, No. 1:11-cv-03988-AKH (S.D.N.Y.; filed on June 13, 2011) ("*Chatlin* Action").  Both the *Stabile* Action and the *Chatlin* Action were voluntarily dismissed.

2011).  *See* Brower Decl., Exhibit C.

Mr. Shemian is a member of the Class (*see* Brower Decl., Exhibit A) and he has timely moved within the 60 day period following publication of the June 13, 2011 notice as required for appointment as Lead Plaintiff under the PSLRA.

## STATEMENT OF FACTS[4]

RIM is a designer, manufacturer and marketer of wireless solutions for the worldwide mobile communications market.  Through the development of integrated hardware, software and services that support wireless network standards, the Company provides platforms and solutions for access to time-sensitive information, including e-mail, phone, short message service, Internet and intranet-based applications.  RIM's primary revenue stream is generated by the BlackBerry wireless solution, comprised of wireless devices, software and services.

During the Class Period, Defendants issued materially false and misleading statements regarding the Company's financials and business prospects.  Specifically, the Company failed to inform investors that its aging product line and inability to introduce new products to the market was negatively impacting the Company's business and margins. Contrary to Defendants' statements, the Company was unable to timely introduce new products, which were critical to the Company's ability to maintain its market share in the extremely competitive smartphone market. RIM's inability to bring new products to the market was further impeded by the fact that the Company had become resource limited as it simultaneously attempted to develop new smartphones, a new operating system, and a new tablet computing device. This resource limitation disrupted RIM's production ability, resulting in lower-than-expected Blackberry smartphone sales and shipments in the United States and Latin America. Moreover, as the

---

[4] This Statement Of Facts is taken from the allegations contained in the *McNeal* Complaint.

3

Company failed to bring new products to the market, it was forced to rely on sales of older-model smart phones, which commanded a far-lower retail price than newer, but delayed, offerings. As a result of Defendants' false statements, RIM's securities traded at artificially inflated prices during the Class Period, reaching a high of $69.86 per share on February 18, 2011.

At the start of the Class Period, Defendants touted the Company's record third quarter of 2011 Blackberry® smartphone shipments, noting that the third quarter 2011 was the "sixth consecutive quarter that RIM has reported record shipments." On March 24, 2011, however, the Company announced disappointing fourth quarter and fiscal 2011 financial results and guidance, resulting in an 11.2% drop in the price of RIM securities, or $7.20 per share on March 25, 2011, on heavy trading volume. In response to this partial disclosure, analysts at Deutsche Bank and Robert W. Baird downgraded RIM.

On April 28, 2011, RIM updated its first quarter 2012 guidance with lower earnings per share ("EPS") estimates than projected the prior month, as a result of lower than expected shipments of Blackberry smartphones in March 2011. RIM blamed lower shipment volumes of Blackberry smartphones for the Company's EPS shortfall. In response to RIM's guidance cut, on April 29, 2011, Jefferies downgraded the Company to "Underperform," stating, "We Were Wrong: QNX Too Late and Too Little." Jefferies analysts further stated, "[RIM] will see continued execution issues, product delays, and lackluster product launches for the next year. We believe Blackberry OS 7.0 (renamed, formerly 6.1) and QNX will be delayed and that carriers are withdrawing support." On this news, RIM's shares plummeted 14%, or $7.94 per share, to close at $48.65 per share on April 29, 2011, on heavy trading volume.

On June 16, 2011, the Company announced its financial result for the first quarter of fiscal 2012, ended May 28, 2011. For the quarter, the Company disappointed analysts and investors, reporting earnings of $1.33 per share, down $0.05 from the first quarter of fiscal 2011. The Company also revised its expectations for full year per share earnings. On that news, RIM's shares plummeted even further to close on June 17, 2011 at $27.75, off 21.5% or $7.58 from the prior day's close of $35.33 on over 113 million shares traded.

As a result of Defendants' false statements and omissions, RIM's securities traded at inflated levels during the Class Period. After the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down over 60% from their Class Period high, and causing Plaintiff and Class members damages.

## ARGUMENT

### I.   THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

Consolidation of securities class actions is appropriate where, as here, the actions involve common questions of law and fact. Both the Federal Rules of Civil Procedure (*see* FED. R. CIV. P. 42(a))[5] and the PSLRA provide for consolidation of related actions brought under the federal securities laws. Section 21D(a)(3)(B)(iii) of the Exchange Act addresses the issue of consolidation of related securities actions:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the Court shall not make the determination [of appointment of lead plaintiff] until after the decision on the motion to consolidate is rendered . . . .

*See* 15 U.S.C. §78u-4(a)(3)(B)(ii).

The related Actions are suited for consolidation. The class action complaints are all

---

[5] *See* Fed. R. Civ. P. 42(a): "Consolidation. If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions."

5

brought by purchasers of RIM securities against the same Defendants. The complaints contain similar allegations charging Defendants with making false and misleading statements, and omitting material information concerning the Company's business and financial results during the relevant period. While district courts have significant discretion in determining the propriety of consolidation, they have recognized that consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and/or reports. *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006) (citation omitted); *see also Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001). Differences between particular defendants, damages, and/or class periods do *not* defeat the appropriateness of consolidation for federal securities cases based upon the same underlying facts. *See Malasky v. IAC/InteractiveCorp*, No. 04-7447, 2004 U.S. Dist. LEXIS 25832, at *6 (S.D.N.Y. Dec. 21, 2004). Therefore, this Court should consolidate the related Actions.

## II.   MR. SHEMIAN SHOULD BE APPOINTED LEAD PLAINTIFF

### A.   The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a strict, detailed procedure for the selection of Lead Plaintiff to oversee a securities class action. *See* 15 U.S.C. §78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the Class informing Class members of their right to file a motion for appointment as Lead Plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff in the *Chatlin* Action published a notice on *Business Wire* on June 13, 2011. *See* Brower Decl., Exhibit C.[6] This

---

[6] *Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, No. 02-8264, 2004 U.S. Dist. LEXIS 9571, at *20 (S.D.N.Y. May 27, 2004); *Lax v. First Merchs. Acceptance Corp.*, No. 97-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

notice indicated that applications for appointment as Lead Plaintiff were to be made no later than 60 days from the date of the press release, which would be August 12, 2011. Within 60 days after publication of the required notice, any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. §78u-4(a)(3)(A) and (B).

Next, the PSLRA requires that within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be the most capable of adequately representing the interests of Class Members. 15 U.S.C. §78u-4(a)(3)(B)(i). In making this determination, the statute directs the Court to the following objective criteria:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> (aa)  has either filed the complaint or made a motion in response to a notice…
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

### B.  Mr. Shemian Is "The Most Adequate Plaintiff"

#### 1.  Mr. Shemian Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff

Mr. Shemian moves this Court to be appointed Lead Plaintiff and has timely filed the instant motion to be appointed Lead Plaintiff within the 60-day time period requirement. Accordingly, Mr. Shemian meets the requirements of 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa) and has filed his motion by August 12, 2011.

Moreover, Mr. Shemian has the largest known financial interest in the relief sought by the Class. Mr. Shemian has shown his willingness to represent the Class by signing the sworn Plaintiff's Certification detailing his RIM transaction information during the Class Period and confirming his willingness to discharge the obligations of a class representative in the Action. *See* Brower Decl., Exhibit A.

In addition, Mr. Shemian has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm resume of proposed Lead Counsel, Brower Piven, is attached as Exhibit D to the Brower Declaration.

### 2.   Mr. Shemian Has the Largest Financial Interest

According to 15 U.S.C. §78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants who have the largest financial interest in the relief sought by the action. *See Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401-02 (S.D.N.Y. 2004). As demonstrated herein, Mr. Shemian, with losses of approximately $21,783,978.68 on shares of RIM common stock as a result of the three partial disclosures alleged in the *McNeal* Action, has the largest known financial interest in the relief sought by the Class. *See* Brower Decl., Exhibit B.

### 3.   Mr. Shemian Satisfies the Requirements of Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

8

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (holding that typicality and adequacy are the only relevant prerequisites to Lead Plaintiff selection under the PSLRA); *see also Sczensy Trust v. DiCamillo*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("In fact, a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.") (citation omitted).

As detailed below, Mr. Shemian satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff. Mr. Shemian has claims that are typical of those of other Class Members and he can adequately serve as Lead Plaintiff.

      **i.**      **Mr. Shemian's Claims Are Typical of the Claims of All the Class Members**

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992). The requirement that the proposed class representatives' claims be typical of the claims of the class

9

does not mean, however, that the claims must be identical. *See Daniels v. City of N.Y.*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001) (citing *Wilder v. Bernstein*, 499 F. Supp. 980, 922 (S.D.N.Y. 1980)); *see also Ferrari v. Impath*, No. 03-5667, 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004).

In this case, the typicality requirement is met because the claims of Mr. Shemian are identical to, and non-competing and non-conflicting with the claims of the other Class members. Mr. Shemian purchased RIM shares during the Class Period when the prices were artificially inflated as a result of Defendants' misrepresentations and omissions, and thus, both Mr. Shemian and the Class members suffered damages as a result of these purchases. Therefore, Mr. Shemian's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health*, 182 F.R.D. at 49-50. Mr. Shemian is not subject to any unique or special defenses. Thus, Mr. Shemian meets the typicality requirement of Fed. R. Civ. P. 23 because his claims are the same as the claims of the other Class members.

### ii.     Mr. Shemian Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B).

Mr. Shemian's interests are clearly aligned to those of the other members of the Class. Not only is there no evidence of antagonism between Mr. Shemian and the other Class members, but Mr. Shemian has a significant, compelling interest in prosecuting these Actions to a successful conclusion based upon the very large financial loss that he has suffered as a result of

the wrongful conduct alleged in these Actions. This motivation, combined with Mr. Shemian's identical interests with the members of the Class, demonstrates that Mr. Shemian will vigorously pursue the interests of the Class. In addition, Mr. Shemian has selected a law firm to represent him and the Class that is highly experienced in prosecuting securities class actions.

In sum, because of Mr. Shemian's common interests with the Class members, his clear motivation and ability to vigorously pursue these Actions, and his competent counsel, Mr. Shemian meets the adequacy requirement of Fed. R. Civ. P. 23. Since Mr. Shemian meets both the typicality and adequacy requirements of Fed. R. Civ. P. 23, and has sustained the largest amount of losses from Defendants' alleged wrongdoing, Mr. Shemian is the presumptive Lead Plaintiff in accordance with 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), and he should be appointed as such to lead these Actions.

### III. THE COURT SHOULD APPROVE MR. SHEMIAN'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

Mr. Shemian has selected Brower Piven to serve as Lead Counsel for the Class. The firm has not only prosecuted complex securities fraud actions, but has also successfully prosecuted many other types of complex class actions as lead and/or class counsel. *See* Brower Decl., Exhibit D. This Court may be assured that in the event that Mr. Shemian's Motion is granted, the members of the Class will receive the highest caliber of legal representation.

### CONCLUSION

For all of the foregoing reasons, Mr. Shemian respectfully requests that this Court enter

an order: (1) consolidating the related Actions; (2) appointing Mr. Shemian to serve as Lead Plaintiff in these Actions; (3) approving Mr. Shemian's selection of Lead Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

Dated: August 12, 2011                Respectfully submitted,

**BROWER PIVEN**
  A Professional Corporation

  _/s/   David A.P. Brower_
David A.P. Brower
Brian C. Kerr
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile:  (212) 501-0300

*Counsel for Robert Shemian and*
*Proposed Lead Counsel for the Class*