**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LAURA PREFONTAINE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> RESEARCH IN MOTION LIMITED, BRIAN BIDULKA, JAMES L. BALSILLIE and MIHALIS "MICHAEL" LAZARIDIS, <br><br> Defendants. | Civil Action No. 1:11-cv-04068-RJS |
| NANCY A. DEMARKIS, Individually and on Behalf of All Others Similarly Situated, <br> Plaintiff, <br><br> v. <br><br> RESEARCH IN MOTION LIMITED, BRIAN BIDULKA, JAMES L. BALSILLIE and MIHALIS "MICHAEL" LAZARIDIS, <br><br> Defendants. | Civil Action No. 1:11-cv-04560-RJS |
| MICHAEL MCNEAL AND KENNETH GOLD, Individually And On Behalf of All Others Similarly Situated, <br> Plaintiffs, <br><br> v. <br><br> RESEARCH IN MOTION LIMITED, BRIAN BIDULKA, JAMES L. BALSILLIE and MIHALIS "MICHAEL" LAZARIDIS, <br><br> Defendants. | Civil Action No. 1:11-cv-05472-RJS |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF ROBERT SHEMIAN TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

## TABLE OF CONTENTS

ARGUMENT……………………………………………………………………...1

I.      SHEMIAN IS THE PRESUMPTIVE LEAD PLAINTIFF…………………………….1

II.     THE PRESUMPTION IN FAVOR OF SHEMIAN HAS
        NOT BEEN REBUTTED…………………………………………………...........4

        A.      Shemian Is Not Subject To Unique Defenses……………………………….4

        B.      Shemian Only Traded RIMM For His Own Account And Has Standing………...6

        C.      Shemian Can Represent All Investors In These Actions…………………………7

III.    THE REQUESTS FOR DISCOVERY OF SHEMIAN SHOULD BE DENIED………...9

IV.     THE COMPETING MOVANTS SHOULD NOT BE APPOINTED
        LEAD PLAINTIFF……………………………………………………………...10

CONCLUSION………………………………………………………………………10

Robert Shemian ("Shemian") submits this combined memorandum in reply to the oppositions filed by the RIM Investor Group ("RIG") and the District No. 9 Pension Trust ("District 9") to the appointment of Shemian as lead plaintiff,[1] and in further support of his motion to consolidate the Actions, to be appointed lead plaintiff, and for approval of his selection of class counsel.

## ARGUMENT

## I.    SHEMIAN IS THE PRESUMPTIVE LEAD PLAINTIFF

Based on the submissions in support and opposition to the three competing motions for appointment of lead plaintiff, Shemian is the presumptive lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Here, Shemian has suffered *by far* the largest loss on his purchases of RIMM common stock during the Class Period (*$21,783,978.68*) among the competing lead plaintiff movants – a loss that is *more than $17.5 million larger* than the next largest movant.[2]  Further, Shemian has demonstrated that he "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(cc); *see* Shemian Memo at 8-11; Shemian Opp. at 3-5.  The presumptive lead plaintiff must be appointed unless it is proven that he will not satisfy the typicality and adequacy requirements of Rule 23.  *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008).  Here, the other competing lead plaintiff movants have failed to offer any "*proof*" – as expressly required by 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) – to rebut the presumption in favor of Shemian's appointment under the PSLRA.

---

[1]  *See* memoranda in support of the competing motions: Dkt. No. 12 ("Shemian Memo"), Dkt No. 15 ("District 9 Memo"), and Dkt. No. 9 ("RIG Memo"); and oppositions to competing motions: Dkt. No. 21 ("Shemian Opp."); Dkt. No. 20 ("RIG Opp."); Dkt. No. 23 ("District 9 Opp.").  All terms used herein have the same meaning as in the Shemian Opp.

[2]  RIG and District 9 claim losses of approximately $4,268,418.00 and $388,926.40, respectfully.  *See* Dkt. No. 10, Ex. C to the Declaration of Richard W. Gonnello; Dkt. No. 16, Ex. C to the Declaration of David A. Rosenfeld.

Therefore, Shemian should be appointed as lead plaintiff.

RIG erroneously argues that Shemian miscalculated his RIMM losses by "arbitrarily limiting his analysis of put investments to 'transactions closed after disclosure dates'" and excluded gains on "put investments closed out prior to March 24, 2011."  RIG Opp. at 4.[3] However, the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), established that for losses to be recoverable by a plaintiff in a securities fraud action they must be proximately caused by the disclosure of the alleged fraud.  *See id*. at 346.  Following *Dura*, courts have repeatedly applied this loss causation principle to the lead plaintiff selection, concluding that a lead plaintiff movant cannot include in the calculation of "financial interest" in-and-out transactions, which took place during the period, but before a curative announcement and corresponding decline in the price of the subject securities.  *See, e.g.*, *In re Converse Tech., Inc. Sec. Litig.*, No. 06-1825, 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. Mar. 2, 2007).[4]  Thus, under *Dura*, any losses or gains realized from stock movements that occurred before RIMM's alleged misconduct was first partially disclosed on March 24, 2011 cannot be proximately linked to the disclosure of that alleged misconduct, and, therefore, are irrelevant to computing the competing lead plaintiff's "financial interest."

---

[3]  RIG also argues that Shemian somehow attempted to conceal certain of his transactions, *see* RIG Opp. at 4-6.  This is facially absurd.  That Shemian fully disclosed all of his transactions in RIMM securities during the Class Period in his PSLRA Plaintiff's Certification is demonstrated by the fact that the other lead plaintiff movants had the necessary information to make their various (albeit incorrect and/or irrelevant) attempts at re-calculating Shemian's losses in their respective oppositions.

[4]  *See also Perlmutter v. Intuitive Surgical, Inc.*, No. 10-03451, 2011 U.S. Dist. LEXIS 16813, at *15 (N.D. Cal. Feb. 15, 2011) ("In determining the financial interests of potential lead plaintiffs, some district courts decided, in light of *Dura*, not to consider losses resulting from stock trades that occurred prior to any disclosure of the defendant's fraud."); *In re Impax Labs., Inc. Sec. Litig.*, No. 04-04802, 2008 U.S. Dist. LEXIS 104485, at *19 (N.D. Cal. Apr. 17, 2008) (since the lead plaintiff applicant sold all of its shares before the disclosure, it did not suffer any loss); *Kops v. NVE Corp.*, No. 06-574, 2006 U.S. Dist. LEXIS 49713 (D. Minn. July 17, 2006) (eliminating in-and-out losses from plaintiff's calculation).

The Supreme Court explained that an inflated purchase price due to deception or misrepresentation does not in and of itself constitute or proximately cause the relevant economic loss. At the moment the transaction takes place, the plaintiff has suffered no loss because the inflated purchase payment is offset by ownership of a share that at that instant possesses equivalent value. If the purchaser sells the shares before the truth becomes known, the misrepresentation will not have led to any loss. ***Accordingly, for purposes of evaluating financial interest, it makes sense to <u>disregard any gains or losses</u> resulting from stock trades before the truth was disclosed.***

*Schueneman v. Arena Pharms., Inc.*, No. 10-1959, 2011 U.S. Dist. LEXIS 87373, at *13-*14 (S.D. Cal. Aug. 8, 2011) (internal citations omitted; emphasis added).

Thus, contrary to the other movants' "offsetting argument," any profits or losses realized by Class members on intra-Class Period in-and-out transactions are irrelevant under *Dura* and the PSLRA to the calculation of the competing lead plaintiff's losses resulting from the RIMM stock price drops that followed each of the alleged partial curative disclosures.[5] Thus, Shemian properly calculated his losses caused by the three partial disclosures, resulting in over $21 million in compensable losses – the largest financial interest among the lead plaintiff movants.

Moreover, even if the argument that any intra-Class Period profits must be applied as an offset to Shemian's losses on shares held when the partial curative disclosures occurred had any merit, and the Court subtracted the approximately $8 million in profits from the sale of options that the other movants claim should offset Shemian's claimed losses, Shemian's loss, by the other movants' own calculations, is still ***more than $13 million*** and, therefore, ***over three times larger***

---

[5]  *See, e.g.*, *In re: Municipal Mortgage & Equity, LLC, Sec. & Deriv. Litig.*, No. 08-md-1916, at 10 (D. Md. Aug. 27, 2008) (refusing to consider losses from in-and-out trades because "such losses would raise issues different from those presented by class members relying upon the . . . post-disclosure stock price drop.") (Annexed as Ex. B to Reply Declaration Of David A.P. Brower, submitted herewith); *Lehocky v. Tidel Tech., Inc.*, 220 F.R.D 491 (S.D. Tex. 2004) (stock drops that occurred prior to the first partial disclosure could be the result of market "noise."); *see also* 15 U.S.C. §78u-4(e)(1) ("the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.").

3

than the next largest movant.   Thus, this "offsetting" argument utterly fails to diminish the presumption in favor of Shemian's appointment as lead plaintiff.[6]

## II.    THE PRESUMPTION IN FAVOR OF SHEMIAN HAS NOT BEEN REBUTTED

The presumption in favor of Shemian "can be rebutted 'only upon ***proof*** by a member of the purported plaintiff class' that the presumptive lead plaintiff 'will not fairly and adequately protect the interests of the class' or is subject to 'unique defenses' that prevent the plaintiff from adequately representing the class." *Sofran v. Labranche & Co.*, 220 F.R.D. 398, 403 (S.D.N.Y. 2004) (internal citations omitted; emphasis added).   Here, none of the movants have offered any ***proof*** that Shemian is inadequate or subject to a cognizable unique defense, and their attempts to conjure up some basis to oppose Shemian is premised on unsupported and erroneous speculation that must be rejected.

### A.    Shemian Is Not Subject To Unique Defenses

District 9 attempts to argue that Shemian is subject to unique defenses because he is a "day trader."   *See* District 9 Opp. at 4-6.   However, Shemian was not a day trader.   *See* Reply Brower Decl., Ex. A (Declaration of Robert Shemian ("Shemian Decl.")) at ¶5.   As the court in *Schueneman,*

---

[6]   More disturbing about the competing movants' "offsetting" argument is their willingness to adopt – at this nascent stage of the litigation – a measure of damages that would, if they were now appointed to lead the Actions, reduce innumerable Class members' recoverable damages if they realized any profits trading in RIMM securities during the Class Period.   *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (the doctrine of judicial estoppel bars a party's claims where a party prevails on a legal position and then adopts a "later position [that is] clearly inconsistent with its earlier position.").   This raises a serious question as to whether these competing lead plaintiff movants can adequately represent the Class at all.   *See, e.g., W. States Wholesale v. Synthetic Indus.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002) ("[a] class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class."); *Clark v. Experian Info. Solutions, Inc.*, No. 8:00-1217-24, 2001 U.S. Dist. LEXIS 20024, at *13-14 (D.S.C. Mar. 19, 2001) ("the potential prejudice to class members who may wish to pursue claims and relief other than those advanced by Plaintiffs guides the court to conclude that the interests of Plaintiffs are not aligned with those of the class.   Thus, the court finds that Plaintiffs do not adequately represent the proposed class members."); *Pearl v. Allied Corp.*, 102 F.R.D. 921, 923 (E.D. Pa. 1984) ("plaintiffs' efforts to certify a class by abandoning some of the claims of their fellow class members have rendered them inadequate class representatives").

explained:

> [T]he Court is not convinced that Schwartz could fairly be considered a "day trader." Schwartz did engage in a large number of transactions — approximately 770 according to Schwartz — over the Class Period.  However, the large number of total transactions may be due in part to Schwartz's broker executing single purchase orders through a number of separate purchase transactions throughout the day. (Schwartz Decl. of 1/7/11, ¶ 7.) Schwartz denies that he was a "day-trader" . . . . Most importantly, Schwartz retained the majority of his shares. . . . The presumption that Schwartz is the most adequate lead plaintiff has not been rebutted . . .

2011 U.S. Dist. LEXIS 87373, at *23-*24.  Likewise here, Shemian placed large block orders for RIMM shares that were filled by his broker in numerous transactions over the course of the day. *See* Shemian Decl. at ¶¶6-10.

Furthermore, regardless of District 9's self-serving labeling of Shemian as a "day trader," Shermian relied on the false and misleading statements made during the Class Period and on the integrity of the market for RIMM securities, *see id.* at ¶5, and District 9 provided no evidence to the contrary.  *See Schueneman,* 2011 U.S. Dist. LEXIS 87373, at *23 ("Absent evidence that Schwartz did not rely on the market price of the shares . . . the Court will not make such a presumption based on the level of his trading activity.") (citations omitted).  It is well established under the fraud-on-the-market doctrine that even investors who engage in "speedy trading practices" have claims that are typical because "one plaintiff may have decided to . . . buy and then quickly resell shares, does not make his or her case atypical.  Indeed, where plaintiffs proceed on a fraud-on-the-market theory, all traders suffer equally from the alleged unlawful price inflation regardless of their trading strategy or degree of sophistication." *In re Electro-Catheter Sec. Litig.*, No. 87-41, 1987 U.S. Dist. LEXIS 13500, at *12 (D.N.J. Dec. 3, 1987).  Thus, even if Shemian was a "day trader," that fact would be irrelevant to his selection as a lead plaintiff because being a "day trader" would not undermine his suitability to serve as a class representative or lead plaintiff.  Indeed, "day traders" are routinely certified as class representatives in fraud-on-the-market cases

such as this one.  *See, e.g.*, *Crossen v. CV Therapeutics*, No. 03-03709, 2005 U.S. Dist. LEXIS 41396, at *17 (N.D. Cal. Aug. 10, 2005) (rejecting defendants' classification of the plaintiff as a day trader because he had relied upon defendants' false statements in his trading); *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 96 (S.D.N.Y. 2004) ("[D]efendants' attacks on the proposed class representatives' reliance on the integrity of the market because of 'unique' investment strategies do not defeat typicality."), *rev'd on other grounds*, 471 F.3d 24 (2d Cir. 2006).[7]  Thus, this argument does not rebut the presumption in favor of Shemian's appointment as lead plaintiff.[8]

### B.    Shemian Only Traded RIMM For His Own Account And Has Standing

RIG, *without any factual basis*, argues that Shemian lacks standing because "it *appears* that the transactions listed on Shemian's certification are those of Shemian Partners, in which case Shemian does not personally possess title to the claims."  *See* RIG Memo at 3 (emphasis added).

---

[7]  *See also In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102, 108 (D. Conn. 2006) (finding a day trader to be typical); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Labranche & Co, Inc.*, 229 F.R.D. 395, 415 (S.D.N.Y. 2004) (allegation that plaintiff was "a massive day-trading operation" absent "any specific showing as to why transactions by day-traders or in-and-out traders should be disregarded or discounted" did "not suffice to establish that [day trading plaintiff] [was] subject to a unique defense"); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 354 (D. Md. 2003) (declining to find that, as a day trader that allegedly does not rely on "the financial statements or the fundamental value of a company as the rest of the market does," one member of a group moving for lead plaintiff status was atypical") (citations omitted); *Saddle Rock Partners Ltd. v. Hiatt*, No. 96-9474, 2000 U.S. Dist. LEXIS 11931, at *10-*14 (S.D.N.Y. Aug. 17, 2000) (momentum traders or day traders are clearly covered by the fraud on the market doctrine, as "the fact that [a momentum trader or a day trader] may have traded [securities] on the basis of short term price drops which he believed to reflect market inefficiencies indicates that he may have been relying on the integrity of the market to establish the more stable, longer term price"); *Taubenfeld v. Career Educ. Corp.*, No. 03-8884, 2004 U.S. Dist. LEXIS 4363, at *12-*13 (N.D. Ill. Mar. 19, 2004) (rejecting argument that "day trader" was not typical or could not rely on the integrity of the market"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123-24 (S.D.N.Y. 2001) (certifying alleged day traders).

[8]  Indeed, in *Tsirekidze v. Syntax-Brillian Corp.*, No. 07-2204, 2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr. 7, 2008), cited by District 9 for this argument, the court did not refuse to appoint a day trader as lead plaintiff based solely on his trading strategy, noting that "a day trader is not *ipso facto* disqualified from the lead plaintiff role," but rather rejected the movant based on his signing a lead plaintiff certification for two different, competing lead plaintiff groups.  *Id.* at *18.

Such rank speculation is insufficient to rebut the presumption in favor of Shemian.  *See, e.g., In re Oppenheimer Rochester Funds Group Sec. Litig.*, No. 09-md-02063, 2009 U.S. Dist. LEXIS 113555, at *25 (D. Colo. Nov. 18, 2009) (holding that allegations "unsupported by any sworn affidavit or other competent evidence [ ] have no place in lead plaintiff briefing under § 78u-4(a)"). "The PSLRA is clear [that] a member of the purported plaintiff class must present 'proof' [that] the presumptively most adequate plaintiff will not fairly and adequately protect the class or is subject to unique defenses . . . Speculative assertions . . . are therefore insufficient to rebut the lead plaintiff presumption . . .'" *Montoya v. Herley Indus.*, No. 06-2596, 2006 U.S. Dist. LEXIS 83343, at *5-*6 (E.D. Pa. Nov. 14, 2006).[9]

Moreover, ***RIG's speculation is simply wrong***.  Shemian Partners has never invested in a stock, option or other publicly traded security, nor did Shemian make any RIMM investments for any "customers" or "clients" of Shemian Partners or anyone related to any business in which he is involved.  *See* Shemian Decl. at ¶2.  Indeed, all of the RIMM transactions listed on his Plaintiff's Certification were solely in and for his personal accounts, *id.* at ¶3, and the losses he claims are his and his alone.  Thus, he has undeniable standing.[10]

## C.    Shemian Can Represent All Investors In These Actions

The PSLRA "presumes that 'one lead plaintiff can vigorously pursue all available causes of

---

[9]   *See also In re SemGroup Energy Partners, L.P.*, No. 08-425, 2008 U.S. Dist. LEXIS 87218, at *7-*8 (N.D. Okla. Oct. 27, 2008) ("The burden of proof of inadequacy of the presumptive lead plaintiff rests with parties contesting its appointment. Challengers must provide a concrete showing of a conflict of interest to rebut the presumption of adequacy.  Moreover, speculative assertions are insufficient to rebut the lead plaintiff presumption.  Mere innuendo and inferences will not suffice to support allegations of atypicality, conflict of interest or unique defenses").

[10]   While District 9's counsel contacted Shemian's counsel to find out whether the transactions were solely Shemian's and thereby avoided making unsubstantiated arguments to the Court, RIG chose to make its arguments without the benefit of the facts. Even after counsel for RIG was informed by Shemian's counsel that the transactions were solely Mr. Shemian's, RIG has yet to withdraw its incorrect and ludicrous standing argument.

action against all possible defendants under all available legal theories.'" *See In re SureBeam Corp. Sec. Litig.*, No. 03-1721, 2003 U.S. Dist. LEXIS 25022, at *30 (S.D. Cal. Dec. 31, 2003)(emphasis added). In this case, Shemian is able to represent all RIMM investors because he suffered losses on both his common stock and option sale transactions. *See* Shemian Decl. at ¶9. However, even if this was not the case, RIG's argument that it should be appointed a co-lead plaintiff to represent option investors would be improper because it would circumvent the purpose of the lead plaintiff mechanism established by Congress. The law is clear that a lead plaintiff does not have to possess every claim of every member of a class. *Fishbury, Ltd. v. Connetics Corp.*, No. 11496, 2006 U.S. Dist. LEXIS 90696, at *12-*14 (S.D.N.Y. Dec. 14, 2006) (citing *Hevesi v. Citigroup. Inc.,* 366 F. 3d 70, 82 (2d Cir. 2004)); *Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *17-*18 (same)**;** *In re Global Crossing, Ltd. Sec. Litig.,* 313 F. Supp. 2d 189, 204-05 (S.D.N.Y. 2003) (same). Accordingly, "the majority of courts have refused to appoint "niche" lead plaintiffs, arguing that such a practice defeats the PSLRA's goal of 'minimizing lawyer-driven litigation.'" *SureBeam*, 2003 U.S. Dist. LEXIS 25022, at *28 (collecting cases); *see also e.g., The Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y. 2004) (held that where the claims of both shareholders and option holders were predicated on the same misrepresentations . . . there was no need to appoint separate "niche" lead plaintiff.).[11] RIG's gambit "would fracture this litigation . . . and obstruct any efficient and controlled progress" in this case, *see In re Enron Corp., Sec.*

---

[11]   *See also Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *17-*18 (refusing to appoint niche co-lead plaintiff for call options noting that "[b]eing a lead plaintiff is not the same thing as being a class representative, and additional named plaintiffs may be added later to represent subclasses of plaintiffs with distinct interests or claims.") (internal citations omitted); *In re Countrywide Fin. Corp. Sec. Litig.,* 588 F. Supp. 2d 1132, 1157 (C.D. Cal. 2008) (same); *Greenberg v. Bear Stearns & Co.*, 80 F. Supp. 2d 65, 70 (E.D.N.Y. 2000) (refusing to appoint subclasses with separate lead plaintiffs because it would "run counter to one of the stated purposes of the PSLRA which is to 'minimize costs; and to give control of the litigation to lead plaintiffs"); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 549 (N.D. Tex. 1997)  ("Increasing the number of Lead Plaintiffs would detract from the Reform Act's fundamental goal of client control, as it would inevitably delegate more control and responsibility to the lawyers").

*Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002), and, thus, RIG should not be appointed a co-lead plaintiff with Shemian.

## III.    THE REQUESTS FOR DISCOVERY OF SHEMIAN SHOULD BE DENIED

The PSLRA does not permit discovery concerning the adequacy of a proposed lead plaintiff absent a threshold showing that there is "a reasonable basis for finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iv). Courts strictly adhere to this standard, very rarely granting discovery, and then only when there is evidence providing a reasonable basis to diverge from the general rule denying it.  *In re Cendant Corp. Litig.*, 264 F.3d 201, 270 n.49 (3d Cir. 2001).

In the instant case, the other movants have "produced not one iota of evidence to give the Court even a reasonable basis to authorize discovery."  *Ferrari v. Impath, Inc*., No. 03-5667, 2004 U.S. Dist. LEXIS 13898, at *23-*24 (S.D.N.Y. July 15, 2004) (refusing discovery of presumptive lead plaintiff).  The other movants' proffered argument for their improper requests for discovery is solely premised on a patently false argument about Shemian's RIMM trades – an argument that cannot improve with discovery as all of Shemian's transactions in RIMM securities during the Class Period have already been put before the Court.  *See* 15 U.S.C. §78u-4(a)(2)(A)(iv); *SemGroup*, 2008 U.S. Dist. LEXIS 87218, at *9-*10 (denying discovery of a lead plaintiff movant even though other movants argued that his former position and ownership interest created a unique defense).  Indeed, the other movants' requests for discovery from Shemian reveal only that they have ***no "proof"*** to rebut the presumption in his favor and wish to embark on a fishing expedition in hopes of finding something to complain about.  The PSLRA does not countenance discovery for such a purpose. *Oppenheimer*, 2009 U.S. Dist. LEXIS 113555, at *24 ("The PSLRA limits discovery . . . to situations in which the movant 'first demonstrates a reasonable basis' for its assertions of inadequacy. . . . Courts are to 'take care to prevent the use of discovery to harass

presumptive lead plaintiffs,' something the Reform Act was 'meant to guard against.'") (internal citation omitted).[12]

## IV.   THE COMPETING MOVANTS SHOULD NOT BE APPOINTED LEAD PLAINTIFF

First, with losses that are, by Shemian's calculation, only one-fifth of Shemian's losses, and by RIG's own calculation, less than a third of Shemian's losses, RIG clearly does not possess the "largest financial interest" and, accordingly, is not the "most adequate plaintiff."

Second, District 9's "mere status as an institutional investor does not provide any presumption that [it] is a more adequate lead plaintiff than an individual investor with a larger financial interest." *Mohanty v. BigBand Networks, Inc.*, No. 07-5101, 2008 U.S. Dist. LEXIS 32764, at *17-*18 (N.D. Cal. Feb. 14, 2008). *See also* Shemian Opp. at 6 & n.7 (citing cases). Thus, the District 9's institutional status is completely irrelevant to the lead plaintiff selection process which focuses first and foremost on which movant – whether institutional or individual – has the largest financial interest in this litigation. District 9's losses are less than 2% of Shemian's losses and, therefore, it, like RIG, should not be appointed lead plaintiff.

## CONCLUSION

For the foregoing reasons, Shemian respectfully requests that this Court enter an order: (1) consolidating the Actions; (2) appointing Shemian as lead plaintiff in the Actions; (3) approving Shemian's selection of Brower Piven as class counsel; and (4) granting such other and further relief as the Court may deem just and proper.

---

[12] The cases District 9 relies on for its argument do not support its position, as they do not authorize discovery on the baseless grounds that District 9 (as well as RIG) have alleged here. *See* District 9 Opp. at 6 n.6. For example, in *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp 2d 845 (S.D. Ind. 1999), the district court was confronted with a situation in which lawyers sought to aggregate large numbers of investors and authorized the deposition of one party. *Id.* at 848. Here, Shemian is seeking appointment on behalf of himself, not a "group" of unrelated investors.

Dated: September 16, 2011            Respectfully submitted,

**BROWER PIVEN**
  A Professional Corporation

   _/s/   David A.P. Brower_
David A.P. Brower
Brian C. Kerr
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile:  (212) 501-0300

_Counsel for Robert Shemian and
Proposed Lead Counsel for the Class_

11

## **CERTIFICATE OF SERVICE**

I hereby certify that this Reply Memorandum In Further Support Of The Motion Robert Shemian To Consolidate Related Actions; To Be Appointed Lead Plaintiff; And To Approve Proposed Lead Plaintiff's Choice Of Counsel and the Reply Declaration of David A.P. Brower In Support Of The Motion Of Robert Shemian To Consolidate Related Actions; To Be Appointed Lead Plaintiff; And To Approve Proposed Lead Plaintiff's Choice Of Counsel (with Exhibits A and B) were filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and electronically mailed to those indicated as non-registered participants on September 16, 2011.

_/s/  David A.P. Brower_____
David A.P. Brower