UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LAURA PREFONTAINE, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> vs.<br><br>RESEARCH IN MOTION LIMITED, et al.,<br><br>    Defendants. | : : : : : : : : : : : : | Civil Action No. 1:11-cv-04068-RJS<br><br><u>CLASS ACTION</u> |
| NANCY A. DEMARKIS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> vs.<br><br>RESEARCH IN MOTION LIMITED, et al.,<br><br>    Defendants. | : : : : : : : : : : : : | Civil Action No. 1:11-cv-04560-RJS<br><br><u>CLASS ACTION</u> |

[Caption continued on following page.]

REPLY MEMORANDUM IN FURTHER SUPPORT OF DISTRICT NO. 9 I.A. OF M. & A.W.
PENSION TRUST'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

643101_1

|   |   |
|---|---|
| MICHAEL MCNEAL and KENNETH GOLD, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:11-cv-05472 |
| Plaintiffs, | CLASS ACTION |
| vs. |  |
| RESEARCH IN MOTION LIMITED, et al., |  |
| Defendants. |  |

I.     INTRODUCTION AND BACKGROUND

Three movants seek appointment as lead plaintiff in this case, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"): (1) District No. 9 I.A. of M. & A.W. Pension Trust (the "Pension Trust"); (2) Robert Shemian ("Shemian"); and (3) the McNeal/Gold Group. Dkt. Nos. 8, 11, 14. On August 30, 2011, the Pension Trust filed an opposition to the motions of Shemian and the McNeal/Gold Group, demonstrating that neither of them meets the PSLRA's requirements for appointment as lead plaintiff. Dkt. No. 23.

In their opposition briefs, Shemian and the McNeal/Gold Group provide a few brief sentences suggesting why the Court should not appoint the Pension Trust as lead plaintiff. Dkt No. 20 at 7; Dkt. No. 21 at 2, 6. Their suggestions, however, do not support the rejection of the Pension Trust as lead plaintiff here. First, both Shemian and the McNeal/Gold Group contend that because they have larger financial interests, the Pension Trust should not be appointed. Dkt No. 20 at 7; Dkt. No. 21 at 2. However, the PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements." *In re Cendant Corp. Litig.*, 264 F.3d 201, 264, 267 (3d Cir. 2001); Dkt. No. 23, at 1-3.[1] Rather, "to be the presumptive lead plaintiff, a movant must meet the requirements of Rule 23." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011) (Buchwald, J.); *Chilton v. Smith Barney Fund Mgmt. LLC*, 365 Fed. Appx. 298, 299 (2d Cir. 2010). Despite claiming a greater financial interest than the Pension Trust, neither Shemian nor the McNeal/Gold Group satisfy the PSLRA's Rule 23 requirements of typicality and adequacy. *See* Dkt. No. 23 at 1-16. That the

---

[1]     Unless otherwise noted, all emphasis is added and citations are omitted.

Pension Trust may have a smaller financial interest than these movants, therefore, does not prevent the Pension Trust's appointment as lead plaintiff.[2]

Second, the McNeal/Gold Group makes a passing remark that the Pension Trust retained no "net shares" at the end of the Class Period. Dkt. No. 20 at 7. The McNeal/Gold Group carefully avoids telling the Court, however, that the Pension Trust sold *all* of its RIM shares it purchased during the Class Period *after* substantial partial disclosures which, as explained in McNeal's complaint, caused the price of RIM stock to decline as the inflation came out of the stock. Therefore, that the Pension Trust sold its shares after partial disclosures does not weigh against the Pension Trust being appointed lead plaintiff. *See infra*, §II.B.

Finally, Shemian relies on authority outside this District in claiming that the Pension Trust's status as an institutional investor is irrelevant and should not be considered in the determination of the most adequate plaintiff. Dkt. No. 21 at 6. In this District, however, a movant's status as an institutional investor is an important factor to consider when appointing a lead plaintiff. *See infra*, §II.C. The Court, here, however, need not rest on the Pension Trust's status as an institutional investor *alone* in appointing it as lead plaintiff. The fact is, the Pension Trust is the *only* movant that satisfies the PSLRA's Rule 23 requirements, and thereby triggers the PSLRA's lead plaintiff presumption. The Pension Trust is the "most adequate plaintiff" and should be appointed lead plaintiff.

---

[2] *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *In re Silicon Storage Tech., Inc.*, No. C 05-0295-PJH, 2005 U.S. Dist. LEXIS 45246, at *22-*34 (N.D. Cal. May 3, 2005) (rejecting four lead plaintiff movants with higher financial interests because each subject to a unique defense or otherwise did not meet Rule 23's requirements).

## II.     ARGUMENT

### A.     Despite the Claimed Financial Interests, the Pension Trust Is the Only Movant Which Satisfies Rule 23's Requirements

Both Shemian and the McNeal/Gold Group assert that because they claim a larger financial interest than the Pension Trust, this prevents the Pension Trust from being appointed lead plaintiff. Dkt No. 20 at 7; Dkt. No. 21 at 2.  As explained in the Pension Trust's opposition, however, both ignore the fatal flaws that prevent their appointment as lead plaintiff, regardless of their claimed financial interests.  Dkt. No. 23.  Shemian is subject to unique defenses based upon over 21,000 trades he made in RIM securities during the short 7-month Class Period.  Dkt. No. 23 at 4-6. Shemian is not a "typical" investor, and cannot be appointed lead plaintiff.[3]  The McNeal/Gold Group too has failed to establish that it "otherwise meets the requirements of Rule 23." See Dkt. No. 23 at 7-17; 15 U.S.C. §78u-4(a)(3)(B).  In fact, the McNeal/Gold Group did not even attempt to timely submit the evidence required in this District of a movant group; that is how the group was formed, why the members moved jointly, whether there are any pre-litigation relationships between the members and how a group can best serve the class.  See Dkt. No. 23 at 7-9.  The McNeal/Gold Group is also subject to unique defenses based upon its trading which render the group's individual members atypical, and prevent their appointment as lead plaintiff, either as a group or individually. Dkt. No. 23 at 9-17.

---

[3]     The McNeal/Gold Group raised an additional concern about Shemian's standing – that the losses disclosed on Shemian's certification may not be Shemian's losses, but rather the losses of Shemian's clients.  Dkt. No. 20 at 2-3.  The Pension Trust did not raise this concern in its opposition because the Pension Trust's counsel was assured by Shemian's counsel that "based on communications with our client," the losses were sustained in Shemian's own personal accounts. *See* Ex. 1 to the Declaration of David A. Rosenfeld in Support of Reply Memorandum in Further Support of District No. 9 I.A. of M. & A.W.'s Motion for Appointment as Lead Plaintiff, filed concurrently herewith.  The facts detailed in the McNeal/Gold Group's opposition raise a substantial concern about the legitimacy of Shemian's standing.

Because these movants fail to make the typicality and adequacy showing required of them by the PSLRA, the Court moves to the movant with the next largest financial interest, the Pension Trust. *Cavanaugh*, 306 F.3d at 730. The Pension Trust has demonstrated its typicality and adequacy, and is the presumptively most adequate plaintiff. Dkt. No. 23 at 17-18.

### B. The Pension Trust Sold All of Its Shares After Partial Corrective Disclosures

In urging the Court to appoint it lead plaintiff, the McNeal/Gold Group states that the Pension Trust has no "net shares" retained at the end of the Class Period. Dkt. No. 20 at 7. This assertion, however, is of no consequence. The McNeal/Gold Group ignores that the Pension Trust did retain all of its shares until *after* the first two partial corrective disclosures by defendants, including the disclosure which ended the Class Period in the first three complaints filed against defendants. The Pension Trust purchased 11,400 shares of RIM stock on January 4, 2011, and 5,700 shares on January 6, 2011. Dkt. No. 16-2. On March 24, 2011, defendants announced disappointing fourth quarter results and disclosed that RIM's fiscal 2011 performance would not be consistent with defendants' previous statements. These disclosures resulted in a one-day drop of $7.20 per share. *McNeal* Complaint, ¶¶6, 44; *Prefontaine* Complaint, ¶6.[4] On April 28, 2011, RIM announced – directly contrary to its rosy representations concerning the "strong growth in shipments of Blackberry smartphones leading to record revenue" – even lower estimates because of reduced shipments of Blackberry smartphones. *McNeal* Complaint, ¶34; *Prefontaine* Complaint, ¶29. This resulted in a further 14% drop in share price. *McNeal* Complaint, ¶¶7, 51-52; *Prefontaine*

---

[4]   On March 25, 2011, both Deutsche Bank and Robert W. Baird downgraded shares of RIM, noting "'we think RIM will likely continue to lose [market] share.'" *McNeal* Complaint, ¶¶47-48. *See also Prefontaine* Complaint, ¶¶33, 35-36

Complaint, ¶¶7, 39-41.  Only after these significant disclosures, on May 4, 2011, the Pension Trust sold all of its shares.  Dkt. No. 16-2.

In this District, it is clear that "[l]oss causation 'does not require full disclosure and can be established by partial disclosure during the class period which causes the price of shares to decline.'" *In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *12 (S.D.N.Y. July 29, 2009) (Chin, J.) (quoting *Montoya v. Mamma.com Inc.*, No. 05 Civ. 2313 (HB), 2005 U.S. Dist. LEXIS 10224, at *6 (S.D.N.Y. May 31, 2005) (Baer, J.)); *see also Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010) (Sweet, J.) ("partial disclosures can satisfy the loss causation requirement"); *Dura Pharms. v. Broudo*, 544 U.S. 336, 342 (2005)(loss causation met where shares sold after "the relevant truth begins to leak out"); *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 586, 599-600 (S.D.N.Y. 2009) (Holwell, J.) (same).

Thus, judges in this District regularly find that no unique defense is raised where a lead plaintiff movant sells its shares after partial disclosures. *Transocean*, 272 F.R.D. at 132 (finding a movant who sold all of his shares after a partial disclosure is an adequate lead plaintiff); *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028, at *15 (S.D.N.Y. Jan. 25, 2006) (Holwell, J.) (finding movant typical and adequate where it sold all shares after a partial disclosure and was not holding shares at the end of the class period); *Juliar v. SunOpta, Inc.*, No. 08 Civ. 933 (PAC), 2009 U.S. Dist. LEXIS 58118, at *6-*8 (S.D.N.Y. Jan. 30, 2009) (Crotty, J.) (same).[5]

---

[5]   *See also In re MGM Mirage Sec. Litig.*, No. 2:09-cv-01558-GMN-LRL, 2010 U.S. Dist. LEXIS 120061, at *15 (D. Nev. Oct. 25, 2010) (appointing a movant who sold all of its shares after a partial disclosure).

- 5 -

In *Transocean*, Judge Buchwald further noted that "such trading behavior is likely typical of most members of the class, many of whom undoubtedly began selling their shares after the [partial disclosures]." 272 F.R.D. at 132.  Significantly, one of the "partial" disclosures after which the Pension Trust sold its shares was the disclosure, on April 28, 2011, which ended the class period in the first three complaints filed against defendants.  The McNeal/Gold Group's passing assertion that the Pension Trust has no "net shares" is itself misleading and fails to raise any question as to the Pension Trust's adequacy to serve as lead plaintiff.

> **C.    The Pension Trust's Status as an Institutional Investor Further Supports Its Appointment**

Shemian argues that the Pension Trust's status as an institutional investor is irrelevant to the determination of which movant would best protect the interests of the class as lead plaintiff.  Dkt. No. 21 at 6.  Tellingly, Shemian cites only to cases outside this circuit.  *Id*.  The judges in this District routinely acknowledge a movant's status as an institutional investor is an important factor to be considered in determining which movant to appoint as lead plaintiff.  *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99-100 (S.D.N.Y. 2005) (Scheindlin, J.) (citing *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03CV2166, 2004 U.S. Dist. LEXIS 27043, at *18 (N.D. Ohio May 12, 2004) ("The legislative history of the PSLRA reflects a preference for institutional investors in the lead plaintiff role."); *Malasky v. IAC/InteractiveCorp*, No. 04 Civ. 7447 (RJH), 2004 U.S. Dist. LEXIS 25832, at *13-*14 (S.D.N.Y. Dec. 21, 2004) (Holwell, J.) (discussing the PSLRA's preference for institutional investors)).

Even where individual investors do not face unique defenses like those faced by Shemian and the McNeal/Gold Group here, courts in this District have been hesitant to appoint them as lead plaintiff over an institutional investor lead plaintiff movant.  *See Malasky*, 2004 U.S. Dist. LEXIS 25832, at *12-*15.  In *Malasky*, both an institutional investor and an individual investor moved for

appointment as lead plaintiff. *Id*. Although there was no dispute that the individual had the larger financial interest, Judge Holwell noted:

> Although [the individual investor] indicated in his certification that he is willing to assume the responsibilities of lead plaintiff and class representation, he is not an institutional investor. *See Pirelli Armstrong Tire Corp.*, 2004 U.S. Dist. LEXIS 9571, 2004 WL 1179311, at *22 (remarking that some courts have interpreted the PSLRA to favor heavily institutional investors); *In re Cable & Wireless, PLC Securities Litigation*, 217 F.R.D. 372, 376 (E.D. Va. 2003) ("the purpose of the PSLRA's selection-of-lead-plaintiff provision was to get institutional investors involved in the prosecution of securities class action suits"). In order to address this concern, the Court designates both [the individual investor] and the [institutional investor] as co-lead plaintiffs in the belief that together, they can ensure adequate representation to the prospective class.

*Id.* at *13; *Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp*, 409 F. Supp. 2d 482, 483 (S.D.N.Y. 2006) (Rakoff, J.) (finding individuals lack experience and may have unique defenses, and appointing institution with lesser losses to serve as co-lead plaintiff).[6] Here, the Pension Trust is the only institutional investor that has moved to be appointed lead plaintiff.[7]

In the end, the Court need not unduly focus on the desire of Congress to increase the participation of institutional lead plaintiffs, the opinions of the judges of this District or the fact that the Pension Trust is the only institutional investor movant before it as the Pension Trust is the statutorily "most adequate plaintiff" because it is the only movant which satisfies all of the PSLRA's lead plaintiff requirements. The fact that the Pension Trust is an institutional investor, therefore, simply lends additional support for its appointment here. *See Pompano Beach Police &*

---

[6]   *See also Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071 (C.D. Cal. 1999) (appointing an individual investor and an institutional investor as co-lead plaintiff to serve a broad range of interests).

[7]   The preference for institutional investors is not merely academic, as demonstrated by the recent $627 million recovery by institutional investors in *In re Wachovia Preferred Sec. and Bond/Notes Litig.*, No. 09 Civ. 6351 (RJS) (S.D.N.Y.).

*Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, No. CV 09-3007 (SJF) (AKT), 2010 U.S. Dist. LEXIS 103218, at *12-*13 (E.D.N.Y. Aug. 17, 2010) (finding institutional investor met the PSLRA's requirements and that its status as an institutional investor "further supports its designation as lead plaintiff").[8]

### III. CONCLUSION

The Pension Trust is an institutional investor which is also the only movant that meets each of the PSLRA's lead plaintiff requirements. Thus, regardless of the other movants' claimed financial interest in the relief sought by the class, it is the Pension Trust which is the most adequate lead plaintiff. The Pension Trust respectfully requests that the Court grant its motion for appointment as lead plaintiff.

DATED: September 16, 2011　　　　　　　　ROBBINS GELLER RUDMAN
　　　　　　　　　　　　　　　　　　　　　　　　& DOWD LLP
　　　　　　　　　　　　　　　　　　　　　SAMUEL H. RUDMAN
　　　　　　　　　　　　　　　　　　　　　DAVID A. ROSENFELD


　　　　　　　　　　　　　　　　　　　　　s/ DAVID A. ROSENFELD
　　　　　　　　　　　　　　　　　　　　　DAVID A. ROSENFELD

---

[8] *See also See Martin v. Atchison Casting Corp.*, 200 F.R.D. 453, 456 (D. Kan. 2001) ("the purpose of the statute's requirement that the most adequate plaintiff be appointed is to ensure that institutional investors with expertise in securities and strong financial interests in the outcome of the litigation control the course of the lawsuit"); *In re E.spire Commc'ns. Sec. Litig.*, 231 F.R.D. 207, 212 (D. Md. 2000) ("The Court would note that Congress has expressed its preference that securities fraud litigation be directed by large institutional investors."); *Haung v. Acterna Corp.*, 220 F.R.D. 255, 258 (D. Md. 2004) ("'Ideally, courts will appoint institutional investors with large holdings in the stock as lead plaintiff.'" (quoting *Yousefi*, 70 F. Supp. 2d at 1066)); *Zaltzman v. Manugistics Group, Inc.*, No. S-98-1881, 1998 U.S. Dist. LEXIS 22867, at *13 (D. Md. Oct. 8, 1998) ("Congress thus endeavored to promote the active participation of institutional investors in these cases: 'Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.'" (quoting *Ravens v. Iftikar*, 174 F.R.D. 651, 733 (N.D. Cal. 1997)).

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID J. GEORGE
ROBERT J. ROBBINS
JAMES L. DAVIDSON
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

[Proposed] Lead Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 16, 2011.

    s/ DAVID A. ROSENFELD
    DAVID A. ROSENFELD

    ROBBINS GELLER RUDMAN
       & DOWD LLP
    58 South Service Road, Suite 200
    Melville, NY  11747
    Telephone:  631/367-7100
    631/367-1173 (fax)

    E-mail: drosenfeld@rgrdlaw.com

643101_1

# Mailing Information for a Case 1:11-cv-04068-RJS

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey A. Berens**
  jeff@dyerberens.com

- **David A.P. Brower**
  brower@browerpiven.com,reception@browerpiven.com

- **James Lee Davidson**
  jdavidson@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Michael Ira Fistel , Jr**
  mfistel@holzerlaw.com,cyoung@holzerlaw.com,cmoore@holzerlaw.com

- **David Jude George**
  dgeorge@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Richard William Gonnello**
  rgonnello@faruqilaw.com,avozzolo@faruqilaw.com,tmaloney@faruqilaw.com,ecf@faruqilaw.com

- **Jay B. Kasner**
  jkasner@skadden.com

- **Scott D. Musoff**
  smusoff@skadden.com

- **Robert Jeffrey Robbins**
  rrobbins@rgrdlaw.com,jdavidson@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)