# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAURA PREFONTAINE, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>    v.<br><br>RESEARCH IN MOTION LIMITED, BRIAN BIDULKA, JAMES L. BALSILLIE, AND MIHALIS "MICHAEL" LAZARIDIS,<br><br>      Defendants. | Civil Action No. 11 Civ. 4068 (RJS) |
| NANCY A. DEMARKIS, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>    vs.<br><br>RESEARCH IN MOTION LIMITED, BRIAN BIDULKA, JAMES L. BALSILLIE, AND MIHALIS "MICHAEL" LAZARIDIS,<br><br>      Defendants. | Civil Action No. 11 Civ. 4560 (RJS) |

(caption continued on subsequent page)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
RIM INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**

| | |
|---|---|
| MICHAEL MCNEAL and KENNETH GOLD, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br>         v.<br><br>RESEARCH IN MOTION LIMITED, BRIAN BIDULKA, JAMES L. BALSILLIE and MIHALIS "MICHAEL" LAZARIDIS,<br><br>                              Defendants. | Civil Action No. 11 Civ. 5472 (RJS) |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.    The RIM Investor Group Should Be Appointed Lead Plaintiff Because Each Of Its Members Has A Larger Financial Interest Than Any Other Movant Who Satisfies Rule 23's Requirements ...................................................................... 2

        A.    The Majority of Courts Allow Small Investor Groups To Serve As Lead Plaintiff ............................................................................................. 2

        B.    Even When Viewed Separately, McNeal And Gold Are Each More Adequate Plaintiffs Than District 9 .................................................................. 4

        C.    Courts Routinely Appoint Options Investors As Lead Plaintiffs ...................... 5

        D.    Courts Routinely Appoint Plaintiffs Who Purchased After Partial Corrective Disclosures Of Fraud ...................................................................... 6

        E.    The Only Maneuvering By Counsel Has Been The Inexplicable Disappearance of Robbins Geller Rudman & Dowd's Previous "Clients" ............................................................................................................ 7

    II.    The RIM Investor Group Should, At Minimum, Be Appointed Co-Lead Plaintiff To Represent Options Investors .................................................................. 8

CONCLUSION ............................................................................................................................... 9

Plaintiffs Michael McNeal ("McNeal") and Kenneth Gold ("Gold") (collectively, the "RIM Investor Group") respectfully submit this reply memorandum of law in further support of the RIM Investor Group's motion to be appointed lead plaintiff in the Actions and in opposition to the two competing motions filed by Robert Shemian ("Shemian") and District No. 9, International Association of Machinists & Aerospace Workers Pension Trust ("District 9").[1]

## PRELIMINARY STATEMENT

As explained in the RIM Investor Group's Opposition Brief, whatever the precise amount of damages suffered by Shemian or his clients, Shemian does not satisfy Rule 23's adequacy and typicality requirements. With total losses of $4,268,418.00, the RIM Investor Group has the next largest financial interest in the litigation. Indeed, when McNeal's and Gold's losses are analyzed individually, each has a larger financial interest in the litigation than the remaining movant, District 9. In an effort to unseat the RIM Investor Group, District 9 has raised a number of arguments as to why the members of the RIM Investor Group are unsuitable to represent the Class. As explained below, these arguments are without merit and should be rejected. The RIM Investor Group easily satisfies Rule 23's typicality and adequacy requirements. The RIM Investor Group's claims are similar, if not identical, to the Class's claims; and the RIM Investor Group's significant stake in the litigation provides it with sufficient incentive to maximize the Class's recovery. The RIM Investor Group is also the only movant to have suffered losses in options investments and therefore in the best position to represent the *entire* Class. Accordingly, the RIM Investor Group is the presumptive lead plaintiff and respectfully submits that its motion to be appointed lead plaintiff should be granted.

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings as those set forth in the RIM Investor Group's Opposition Brief.

**ARGUMENT**

I.  **The RIM Investor Group Should Be Appointed Lead Plaintiff Because Each Of Its Members Has A Larger Financial Interest Than Any Other Movant Who Satisfies Rule 23's Requirements**

   A.  **The Majority Of Courts Allow Small Investor Groups To Serve As Lead Plaintiff**

Although the members of the RIM Investor Group do not have a relationship pre-dating the litigation, the majority of courts to address the issue hold that the appointment of unrelated investors as lead plaintiff is permitted under the PSLRA. *See Reimer v. Ambac Fin. Group, Inc.*, C.A. No. 08 Civ. 411, 2008 U.S. Dist. LEXIS 38729, at *7-8 (S.D.N.Y. May 9, 2008) (explaining that earlier cases holding that unrelated investors cannot be appointed lead plaintiff are now the "minority view"). For that matter, the PSLRA itself expressly permits a "group of persons" to serve as lead plaintiff. *Davidson v. E*Trade Fin. Corp.*, C.A. No. 07 Civ. 10400, 2008 U.S. Dist. LEXIS 61265, at *10 (S.D.N.Y. July 16, 2008) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)).

The RIM Investor Group is composed of a whopping total of two people. Its members collectively suffered $4,268,418.00 in losses, and each member suffered a larger loss individually than District 9 did on behalf of its many beneficiaries:

| Plaintiff | Losses |
|---|---:|
| McNeal | $3,607,832 |
| Gold | 660,586 |
| District 9[2] | 388,903 |

---

[2] When calculated on a last-in first-out basis ("LIFO"), District 9's losses are actually $195,795, roughly half the amount as when calculated on a first-in first-out ("FIFO") basis. *See* Ex. A, Declaration of Richard W. Gonnello, dated September 16, 2011, filed contemporaneously herewith.

2

McNeal and Gold are sophisticated investors with substantial means. They jointly filed a complaint, were aware that they were doing so, and intended at the time of the complaint's filing to jointly seek appointment as lead plaintiff in the Actions. This is not a case where a large numbers of investors are being glommed together in an effort to leapfrog past the largest individual loser by claiming that the group collectively suffered a larger loss. *See Davidson*, 2008 U.S. Dist. LEXIS 61265, at *10-13 (appointing a three-member group because it was "relatively small and therefore presumptively cohesive" and, in any event, one of its members "losses alone would qualify it as the party with the largest financial interest in the litigation").

In establishing the PSLRA's rebuttable presumption, Congress required nothing more than the submission of the certifications that McNeal and Gold filed with their complaint. *See* 15 U.S.C. § 78u-4(a); *In re Fuwei Films Secs. Litig.*, 247 F.R.D. 432, 439 (S.D.N.Y. 2008) ("a prospective lead plaintiff need only make a preliminary, *prima facie* showing that his or her claims satisfy the requirements of Rule 23"); *Lipetz v. Wachovia Corp.*, No. 08 Civ. 6171 (RJS), 2008 U.S. Dist. LEXIS 108279, at *7 (Oct. 9, 2008) ("[I]n deciding a motion to serve as lead plaintiff, the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met.") (citation omitted)); *Kokkinis v. Aegean Marine Petroleum Network, Inc.*, 11 Civ. 0917 (BSJ) (JCF), 2011 U.S. Dist. LEXIS 54939, at *4 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.,* 252 F.R.D. 188, 191 (S.D.N.Y. 2008) (same). District 9's attempt to move the goalpost by claiming that there are additional requirements before a movant can invoke the presumption (*e.g.*, the submission of additional declarations) is without basis.

### B. Even When Viewed Separately, McNeal And Gold Are Each More Adequate Plaintiffs Than District 9

McNeal and Gold each lost more individually than District 9 did on behalf of its numerous beneficiaries. Even courts that are reluctant to appoint groups, do not hesitate to deconstruct the group and analyze its members individually. *See, e.g., Pipefitters Local No. 636 Defined Benefit Plan v. Bank of America Corp.*, 11 Civ. 733 (WHP), 2011 U.S. Dist. LEXIS 69022, at *12-13 (S.D.N.Y. June 20, 2011); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394 (S.D.N.Y. 2008) (court considered the largest investor in the group as if he had moved individually to be appointed as lead plaintiff); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 401 (S.D.N.Y. 2006) (rejecting plaintiff's aggregation in favor of evaluating plaintiffs' financial interest individually); *Barnet v. Elan Corp.*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that there was no evidence group of six investors was formed in bad faith where "even were the Court to deconstruct the Group, two of its individual members would still have the 'largest financial interest'"); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (after rejecting groups, considered each potential lead plaintiff individually); *In re Flight Safety Tech., Inc. Sec. Litig.*, 231 F.R.D. 124, 130 (D. Conn. 2005) (looking past motion by group of eight plaintiffs to evaluate their financial interests individually, in an exercise of the court's "inherent authority").

Thus, District 9's argument is ultimately of no avail because McNeal and Gold each has a larger financial interest in the litigation than does District 9. Accordingly, McNeal and Gold are each entitled to invoke the PSLRA's presumption of being the most adequate plaintiff before District 9.

### C.     Courts Routinely Appoint Options Investors As Lead Plaintiffs

The fact that McNeal invested solely in options and Gold invested primarily in options does not render either atypical to serve as lead plaintiff. Courts often appoint purchasers of one type of securities to represent purchasers of other types of securities. *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 594 (N.D. Cal. 2009) (certifying stock purchasers to represent class of note purchasers); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 445 (S.D. Tex. 2002) ("[C]ourts have repeatedly concluded that stock purchasers can represent purchasers of debt instruments and vice versa in the same action.").

Thus, the fact that the majority of the RIM Investor Group's transactions were options investments is not a bar to either serving as lead plaintiff. *See Davidson*, 2008 U.S. Dist. LEXIS 61265, at *15-22 (S.D.N.Y. July 7, 2008) (appointing movant who had invested in both stocks and options as co-lead plaintiff noting that "courts have [often] appointed as lead plaintiffs purchasers of a wide variety of financial instruments" including options investors); *Lifschitz v. Hexion Specialty Chemicals, Inc.*, 08 Civ. 6394 (RMB), 2009 U.S. Dist. LEXIS 21933, at *2-3 (S.D.N.Y. Mar. 19, 2009) (in denying motion for reconsideration, court reaffirmed appointment of put trader as lead plaintiff for class that included stock purchasers). *See also In re Sepracor Inc.*, 233 F.R.D. 52, 56 (D. Mass. 2005) (certifying options investor as class representative for class that included purchasers of equity securities); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359 (D. Del. 1990) (certifying options investor as class representative for class of purchasers of options and common stock).

Furthermore, *assuming arguendo*, that McNeal were unsuitable to serve as lead plaintiff because he did not purchase any RIM stock, Gold purchased both stock and options. The fact that the majority of Gold's investments were in RIM options does not change the fact that he has a larger financial interest than District 9. Nor does it render him atypical. Although District 9

5

insinuates otherwise, writing/selling puts is not like short selling a stock. Writing puts is tantamount to "wagering" that a stock will increase, not decrease, in value. For example, the court in *In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 98-100 (D. Conn. 2006), certified a class representative who "traded almost exclusively in put options for Priceline stock." In doing so, the court provided a detailed analysis of why writing puts does not render an investor atypical to represent a class of securities investors that includes purchasers of common stock. *Id.* Thus, if the Court were to reject McNeal as a lead plaintiff, the Court should nonetheless appoint Gold as sole lead plaintiff because he has a larger financial interest in the litigation than District 9.

### D. Courts Routinely Appoint Plaintiffs Who Purchased After Partial Corrective Disclosures Of Fraud

District 9 argues that the RIM Investor Group is atypical because its members' transactions occurred after the defendants made corrective disclosures. Although some courts have expressed concerns about plaintiffs based on their specific trading patterns and the specific corrective disclosures at issue, courts reject such arguments based merely on the fact that plaintiffs invested after partial disclosures. *See, e.g.*, Ex. B, *Greenberg v. China Valves Tech.*, NO. 11 Civ. 1564 (LAK), slip op. at 2 (S.D.N.Y. June 29, 2011) ("The fact that Bristol bought after the bad news came out in this Court's view does not materially affect its ability to represent the alleged class."); *Hufnagle v. Rino Int'l Corp.*, Case No. CV 10-8695-VBF(VBKx), 2011 U.S. Dist. LEXIS 19771, at *22-23 (C.D. Cal. Feb. 14, 2011) ("[C]ourts have ruled that purchases of stock by the class representatives after negative announcements during the class period or even after the close of the class period do not destroy typicality."); *see also South Ferry LP #2 v. Killinger*, 271 F.R.D. 653, 659-60 (W.D. Wash. 2011) (finding proposed class representative typical notwithstanding its purchases of company stock after the company made a corrective disclosure because it was not clear that the disclosure was "fully corrective"); *In re Washington*

6

*Mutual, Inc. Sec., Derivative & ERISA Litig.*, C.A. No. 08-md-1919, 2010 U.S. Dist. LEXIS 142992, at *47-48, (W.D. Wash. Oct. 12, 2010) (". . .Plaintiffs correctly contend that the purchase of stock after a partial disclosure is not a defect to typicality.").

Here, District 9 has offered no principled explanation to support an argument that *all of the defendants' fraud* was revealed to the marketplace on March 24, 2011 and April 28, 2011. In fact, the price of RIM shares declined 21% on June 17, 2011 after the defendants' June 16, 2011 disclosures. *See* RIM Investor Group Compl. at ¶¶ 58-63. More importantly, the defendants have made no admission of fraud! *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 345 & n. 57 (S.D.N.Y. 2009) (rejecting the same argument because the fraud had not been fully disclosed prior to plaintiff's purchases) (collecting cases); *Dietrich v. Bauer*, 192 F.R.D. 119, 125 (S.D.N.Y. 2000) (finding proposed class representative typical despite continuing to purchase after wide dissemination of negative publicity) ("none of the releases or articles flagged actually conceded the existence of the fraudulent schemes at issue in this litigation"). Thus, District 9's argument is merely another baseless effort to wrest control of this litigation.

### E.    The Only Maneuvering By Counsel Has Been The Inexplicable Disappearance of Robbins Geller Rudman & Dowd's Previous "Clients"

District 9 complains that the RIM Investor Group used a different class definition than the one District 9 would have used it had chosen to file a complaint. As District 9 must surely know, differing class definitions are a fact of life in these kinds of cases and are perfectly proper. *See In re Fuwei Films Secs. Litig.*, 247 F.R.D. at 435 (consolidating complaints with different defendants and class periods); *In re Doral Financial Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402 (S.D.N.Y. 2006) ("For the purpose of determining lead plaintiff, I find that the use of the longer, most inclusive class period . . . is proper, as it encompasses more potential class members . . ."). Tellingly, Shemian adopted the longer class period, and presumably supports the inclusion of

7

option investors given that he moved to consolidate the Actions.  *See* Shemian Opening Br. at 1 & n.1.

District 9 additionally complains that the RIM Investor Group's class definition is somehow evidence of lawyer-driven litigation.  Given the RIM Investor Group's investments, it should be obvious why McNeal and Gold framed their complaint as they did.  Moreover, if any firm has engaged in lawyer-driven litigation in this case, it has been counsel for District 9.  Although District 9 never filed a complaint, before filing District 9's lead plaintiff motion, District 9's counsel filed ***four separate complaints*** in this District on behalf of four different "clients":

| Name | Number |
| --- | --- |
| *Mary T. Stabile v. Research In Motion Limited* | Civil Action No. 11 Civ. 3615 (AKH) |
| *Gerald Chatlin v. Research In Motion Limited* | Civil Action No. 11 Civ 3988 (AKH) |
| *Laura Prefontaine v. Research In Motion Limited* | Civil Action No. 11 Civ 4068 (RJS) |
| *Nancy Demarkis v. Research In Motion Limited* | Civil Action No. 11 Civ 4560 (RJS) |

Why were these complaints filed, promoted to great fanfare, and then suddenly abandoned?  *See* Ex C (RGRD Press Release).  Did counsel simply abandon each client in favor of District 9?  Likewise, what happened to the three different firms listed as co-counsel on those complaints?  And if District 9's counsel is so offended by what it deems as "trolling notices" why does it routinely work with/utilize firms that issue them?  *See* Ex. D (Press releases of RGRD's Co-Counsel, including one for this case).

II.     **The RIM Investor Group Should, At Minimum, Be Appointed Co-Lead Plaintiff To Represent Options Investors**

District 9 cannot have it both ways.  If options investors are not suitable to serve as representatives for common stock investors, surely the converse is also true. Accordingly, the RIM Investor Group should, at the very least, be appointed Co-Lead Plaintiff to represent a subclass of options investors harmed by the defendants.  *See Davidson*, 2008 U.S. Dist. LEXIS

8

61265, at *21-22 (S.D.N.Y. July 7, 2008) (court appointed movant with largest losses among individual investors as co-lead because he had standing to pursue claims on behalf of various subclasses, had incurred substantial losses trading stock, as well as losses trading options). Lastly, having individual plaintiffs as part of the leadership structure would add much needed diversity to the Class's representation and ensure the protection of the *entire* Class.  *See Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp*, 409 F. Supp. 2d 482, 483 (S.D.N.Y. 2006) (court determined that the "unusual circumstances" of the cases warranted appointing pension fund and two individual investors as lead plaintiffs); *Malasky v. IAC/InteractiveCorp*, No. 04 Civ. 7447 (RJH), 2004 U.S. Dist. LEXIS 25832 (S.D.N.Y. Dec. 20, 2004) (court appointed an individual investor and an investor group as co-lead plaintiffs).

## CONCLUSION

For the foregoing reasons as well as those set forth previously, the RIM Investor Group respectfully requests that the Court: (1) appoint the RIM Investor Group as lead plaintiff for the consolidated Actions; (2) approve the RIM Investor Group's selection of the Faruqi Firm as lead counsel for the Class; (3) consolidate the above-captioned Actions; and (4) grant such other relief as the Court may deem just and proper.

Dated:  September 16, 2011                                        Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: /s/ Richard W. Gonnello
Antonio Vozzolo
Richard W. Gonnello
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
avozzolo@faruqilaw.com
rgonnello@faruqilaw.com

                Jacob A. Goldberg
                Sandra G. Smith
                101 Greenwood Avenue, Suite 600
                Jenkintown, PA  19046
                Tel: 215-277-5770
                Fax: 215-277-5771
                jgoldberg@faruqilaw.com
                ssmith@faruqilaw.com

                *Attorneys for the RIM Investor Group*